UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTOR AREAN, ET AL.,

     Plaintiffs,

                    Case No. 8:10-cv-2244-T-33MAP

v.

CENTRAL FLORIDA INVESTMENTS, INC.,
ET AL.,

     Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' Motion for Summary Judgment (Doc. # 91), filed on December 8, 2011. Plaintiffs filed a response in opposition (Doc. # 106) on January 9, 2012. With leave of the Court, Defendants filed a reply to Plaintiffs' response (Doc. # 115) on January 20, 2012. After due consideration and for the reasons stated in this Order, the Motion for Summary Judgment is granted in part and denied in part in this employment discrimination case.

## I.   Background

Plaintiff Victor Arean was employed by Defendant Central Florida Investments, Inc. ("CFI") to work at an apartment complex, Defendant Cinnamon Cove Apartments ("Cinnamon Cove"), from December 28, 2007, to February 10, 2010. (Doc. # 25-1 at

2); (Arean Dep. Doc. # 107-1 at 7). Arean worked as a maintenance technician until he was promoted to maintenance supervisor on August 1, 2008. (Id. at 8). Plaintiff Dana Jackson began working as a leasing agent at Cinnamon Cove in May 2009. (Jackson Dep. Doc. # 107-7 at 9). Defendant Jennifer LaCour worked as a leasing agent at Cinnamon Cove from September 14, 2007, through January 1, 2009, and was promoted to property manager January 2, 2009. (LaCour Dep. Doc. # 107-9 at 23). Upon her promotion, LaCour became Arean's and Jackson's supervisor. (Id. at 61).

Arean alleges that while he worked at Cinnamon Cove, LaCour engaged in sexually harassing behavior on many occasions. (Arean Dep. Doc. # 107-1 at 31). This behavior included incidents at work in which LaCour touched her buttocks against Arean's genital area and lifted her dress to show Arean her undewear, as well as incidents at Arean's home in which LaCour informed Arean "that she had been a stripper" and started to "dance sexually" in front of him and requested Arean to bathe with her and tried to kiss him. (Id. at 31).

In March 2009, Arean requested and received a demotion from CFI's corporate asset manager, Carl Bauer. (Id. at 8). Arean told Bauer the reason for the request was that he was not getting along with LaCour. (Id.). On September 25, 2009,

at Cinnamon Cove's request, a vendor sent a letter to Cinnamon Cove summarizing a conversation he had with Arean while making repairs at Cinnamon Cove on September 23, 2009. (Doc. # 91-3). The vendor stated in the letter that "[Arean] said that [LaCour] was both the property manager and the maintenance supervisor after she had stole (sic) his job. That was when [LaCour] walked out and heard him talking." (Id.).

Based on the conversation and letter, LaCour issued Arean a written disciplinary order on September 25, 2009. (LaCour Dep. Doc. 107-9 at 21); (Doc. # 91-3). While LaCour was issuing the order, Arean told her that he was going to file charges against her for sexual harassment. (LaCour Dep. Doc. # 107-9 at 21-23). Although Arean's allegation reached CFI's human resources manager, Virginia Chadwick, a sexual harassment investigation was not launched at that time. (Chadwick Dep. Doc. # 109-1 at 8-10).

Arean went on Family Medical Leave Act ("FMLA") leave from October 1, 2009, to November 23, 2009. Before returning from leave, on November 6, 2009, Arean reported the sexual harassment allegations to CFI's human resources department. (Arean Dep. Doc. # 107-1 at 32). On November 9, 2009, Bauer and Chadwick met with Arean to discuss his claims, and subsequently met with LaCour to address the issues Arean

raised. (Chadwick Dep. Doc. # 97 at 7-8). LaCour admitted to going to Arean's house and alleged that she and Arean had been romantically involved. (Id. at 50). Ultimately, LaCour was told not to socialize with Cinnamon Cove employees or talk to them about Arean's sexual harassment claims. (LaCour Dep. Doc. # 107-9 at 32).

Prior to Arean's return from FMLA leave, LaCour approached Jackson and asked if Jackson had reported anything to CFI about Arean's sexual harassment allegations. (Jackson Dep. Doc. # 107-7 at 31). On November 20, 2009, Jackson called CFI's human resources department to report the conversation she had had with LaCour and spoke with Sandra Rivera. (Id.). Jackson felt compelled to report the conversation "because her supervisor was asking [her] questions about something that she [was] not supposed to talk about." (Id.). Rivera informed Chadwick of the call but did not inform Bauer. (Chadwick Dep. Doc. # 109-1 at 12); (Bauer Dep. Doc. # 110-1 at 3).

On December 1, 2009, Bauer terminated Jackson's employment. (Bauer Dep. Doc. # 110-1 at 19). Bauer testified that he determined the position was no longer needed because a change in the rules for low-income housing tax credits eliminated approximately 70 percent of Cinnamon Cove's

paperwork and processing staff needs. (Id.). Jackson filed a charge of discrimination with the Florida Commission on Human Relations on October 26, 2010, alleging that she was fired in retaliation for being a witness to and reporting the alleged sexual harassment. (Doc. # 91-9).

On February 8, 2010, Arean and LaCour became involved in a dispute after Arean refused to perform a work order LaCour instructed him to complete. (Arean Dep. Doc. 107-1 at 42). According to Arean, he attempted to explain to LaCour that he could not complete the work order because it was assigned to another person but she became upset and yelled at him. (Id.). However, LaCour maintained that Arean became argumentative, so she told him to clock out and go home for the day. (Doc. # 110-20). In her documentation of the dispute, a witness, Lynn Cross, stated that Arean "was argumentative and kept going out the back door and then coming back in. This went on for several minutes. . . . Finally, I heard [LaCour] tell him to please just clock out and go home for the rest of the day." (Doc. # 107-2 at 49).

After consulting with LaCour and Chadwick, Bauer decided to terminate Arean on February 10, 2010, because of the incident. (Bauer Dep. Doc. # 110-1 at 18). Bauer testified that he terminated Arean "for not doing work that he was

supposed to be doing, not being able to get along with anybody." (Id.). On May 3, 2010, Arean filed a charge of discrimination with the Florida Commission on Human Relations alleging discrimination and retaliation in violation of Title VII and the Florida Civil Rights Act. (Doc. # 107-2 at 41).

Arean initiated this action in state court on September 3, 2010, alleging one count for violation of the Fair Labor Standard Act's ("FLSA") overtime compensation provisions against CFI. (Doc. # 2). The case was removed to this Court on October 6, 2010. (Doc. # 1). An amended complaint was filed on October 14, 2010, which added Jackson as a plaintiff and added CFI Resort Management, Inc., Cinnamon Cove GP # 26, Inc. and LaCour as defendants. (Doc. # 4). Plaintiffs filed a second amended complaint on November 8, 2010, which added Ingrid Rivera as a plaintiff to the FLSA claim, and on January 18, 2011, Ariel Jimenez consented to join the action as an opt-in plaintiff to the FLSA claim.[1] (Doc. ## 11, 27). Also on January 18, 2011, Plaintiffs filed a third amended complaint, which added a Title VII sexual harassment claim by Arean and a Title VII retaliation claim by Arean and Jackson. (Doc. # 30). On May 26, 2011, Plaintiffs filed a fourth

---

[1]    Rivera's and Jimenez's claims have been settled through mediation.

amended complaint adding a Florida Civil Rights Act ("FCRA") sexual harassment claim by Arean and an FCRA retaliation claim by Arean and Jackson. (Doc. # 57).

On December 8, 2011, Defendants filed a motion for summary judgment regarding Arean's sexual harassment and retaliation claims, Jackson's retaliation claims, and the FLSA claims against LaCour. (Doc. # 91). The Motion is ripe for this Court's review.

## II. **Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no

genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his

conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert.</u> <u>denied</u>, 456 U.S. 1010 (1982).

The Court will not weigh the evidence or make findings of fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. <u>Id.</u>

## III. **Analysis**

### A. **Arean's Claims**

#### 1. **Sexual Harassment**

Arean alleges a claim for sexual harassment in violation of Title VII and the FCRA against the corporate Defendants. Section 703(a) of Title VII forbids an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a).[2]

---

[2] Claims under Title VII and the FCRA are analyzed under the same framework. <u>See</u> <u>Gamboa v. Am. Airlines</u>, 170 Fed. App'x 610, 612 (11th Cir. 2006); <u>Howard v. Walgreen Co.</u>, 605 F.3d 1239, 1244 at n. 4 (11th Cir. 2010)("Because retaliation claims under the FCRA are substantively similar to Title VII retaliation claims, we use the same analysis for both claims." (citations omitted)). Accordingly, the Court's Title VII analysis also disposes of Arean's FCRA claim.

A plaintiff claiming discrimination can prove his case through direct or circumstantial evidence. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973); Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001). If the plaintiff relies on circumstantial evidence, the Court applies the McDonnell Douglas burden-shifting analysis. The defendant can rebut an inference of discrimination raised by the plaintiff by demonstrating that it had a legitimate, non-discriminatory reason for the adverse employment action. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited, discriminatory conduct. Id. Here, Arean has not come forward with direct evidence of discrimination, and therefore must prove discrimination with circumstantial evidence.

The Supreme Court has established that sexual harassment claims may take either of two forms: quid pro quo sexual harassment (also called tangible employment action harassment) or hostile work environment sexual harassment. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751-52. Defendants argue that the harassment complained of and supported by

evidence is not sufficiently severe or pervasive as a matter of law to support a hostile work environment sexual harassment claim. Arean offers no evidence in response to raise a genuine issue for trial and instead asserts that his claim is based on tangible employment action harassment, which does not require a showing of severe or pervasive conduct. Accordingly, the Court will analyze Arean's claim under the tangible employment action standard only.

As stated by the Eleventh Circuit in <u>Virgo v. Rivera Beach Associates</u>, tangible employment action sexual harassment "occurs when an employer changes an employee's conditions of employment because of their refusal to submit to sexual demands." 30 F.3d 1350, 1361 (11th Cir. 1994). The Eleventh Circuit set forth the prima facie elements for a tangible employment action sexual harassment claim in <u>Virgo</u> to include: "(1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) the employee's reaction to the unwelcome behavior affected tangible aspects of the employee's compensation, or terms, conditions, or privileges of employment." <u>Id.</u> (citing <u>Sparks v. Pilot Freight Carriers</u>, 830 F.2d 1554, 1557 (11th Cir. 1987)). Thus, to sustain a sexual harassment claim under the

tangible employment action theory, Arean must show that his refusal of LaCour's advances "resulted in a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Myers v. Cent. Fl. Inv., Inc., No. 06-13974, 2007 WL 1667212, *1 (11th Cir. June 11, 2007)(quoting Ellerth, 524 U.S. at 761).

Arean asserts that the disciplinary warnings he received constitute a tangible employment action. However, the Eleventh Circuit has made clear that a written reprimand that does not lead to harm in the form of lost pay or benefits does not constitute an adverse employment action under Title VII. See Wallace v. Ga. Dep't of Transp., 212 F. App'x 799, 801 (11th Cir. 2006); Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1242-43 (11th Cir. 2001).

Further, to the extent that Arean claims that his demotion was a tangible employment action taken by Defendants, the Court is also not convinced. It is undisputed that Arean voluntarily requested the demotion from Bauer and that Bauer discouraged it because he thought Arean "was a very good worker." (Arean Dep. Doc. # 107-1 at 8). Accordingly, the Court finds that Arean's demotion was not an adverse action

-12-

taken by Defendants.

Moreover, the Court finds that Arean cannot establish that his voluntary demotion was a "constructive" demotion. As with a constructive discharge, in order to establish a constructive demotion, Arean must show that his working conditions were so intolerable because of unlawful discrimination that a reasonable person in his position would have been compelled to request the demotion. See Sharp v. City of Houston, 164 F.3d 923, 934 (5th Cir. 1999); Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 877 (7th Cir. 1999). This argument likewise fails because the Court finds that a reasonable person would not have been compelled to request the demotion in order to avoid sexually harassing conduct by LaCour, given that even after the demotion, Arean was still under LaCour's supervision and still subject to her alleged sexual harassment.

There is no question that Arean's termination constituted a "tangible employment action," but in order to sustain the claim, he must show that he was terminated because he refused LaCour's sexual advances. Myers, 2007 WL 1667212, at *1. Arean has not supplied evidence establishing that the reason Bauer terminated him was because he refused LaCour's sexual advances, nor has Arean designated any specific facts that

create a genuine issue for trial.  Accordingly, the Court finds that Arean has failed to establish a prima facie case for tangible employment action sexual harassment.

Even assuming that Arean could establish a prima facie case, Defendants have proffered a legitimate, non-discriminatory reason for Arean's termination.  Indeed, the evidence shows that Bauer, not LaCour, was the person who decided to terminate Arean and that Bauer did so after Arean refused to complete a work order that was assigned to him. (Bauer Dep. Doc. # 110-1 at 18).

Accordingly, to survive summary judgment, Arean must create a genuine issue of material fact as to whether Defendants' proffered reason was not the true reason for his termination but rather a pretext for the discriminatory conduct.  To do this, Arean must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contractions in the employer's proffered legitimate reason for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).

Arean offers three arguments that Defendants' reason for his termination was pretextual: "1) Arean denied the accusations that resulted in this termination (and the warning

that preceded it), 2) Defendants have not mentioned any other employees who were terminated for the same reason and 3) LaCour was involved in both the discipline and the termination, all of which occurred after Arean rejected her advances."[3] For the reasons that follow, the Court finds all of these arguments insufficient to raise a genuine issue of material fact as to whether Defendants' legitimate, non-discriminatory reason for Arean's termination was merely pretext for discrimination.

First, Arean argues that he denied the accusations that resulted in his termination. However, this is of no consequence, because the pertinent consideration is whether Bauer believed the accusations against Arean when he decided to terminate Arean. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)("The inquiry of the ADEA is limited to whether [defendant] . . . believed that [plaintiff] was guilty of harassment, and if so, whether this belief was the reason behind [plaintiff's] discharge."); Hawkins v. Ceco Corp., 883 F.2d 977, 980 n. 2 (11th Cir. 1989)(finding that

---

[3]    Arean also attempts to show that Defendants' reason for issuing the disciplinary warning order was pretextual. However, as the Court has ruled that the warning order did not constitute a tangible employment action, it is not necessary for the Court to analyze those arguments.

the fact that the employee did not engage in the misconduct reported to the employer is irrelevant to the question of whether the employer believed the employee had done wrong). Arean has supplied no evidence that suggests Bauer did not believe the accusations against Arean that formed the basis of his decision to discharge Arean. Accordingly, this argument fails to raise a genuine issue for trial that Defendants' reasons were pretextual.

Next, Arean argues that the fact that Defendants have not mentioned other employees who were terminated for the same reason as Arean demonstrates that Defendants' reason for Arean's termination was merely pretext for discrimination. Defendants are required only to demonstrate that they had a legitimate, non-discriminatory reason for the adverse employment action. Defendants bear only the burden of production; the burden of persuasion remains with Plaintiff. E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1572 (11th Cir. 1993). Accordingly, Defendants' failure to provide evidence that other employees were terminated for the same reasons as Arean does not create a genuine issue for trial regarding whether Defendants' proffered reason was pretextual.

Finally, Arean asserts that LaCour's involvement in the decision to terminate Arean's employment raises a genuine

issue of whether Defendants' legitimate, non-discriminatory reason was merely pretext for discrimination. The Court disagrees. In <u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328, 1331 (11th Cir. 1999), the Eleventh Circuit ruled:

> We have previously stated the general proposition that in some cases, a discharge recommendation by a party with no power to actually discharge the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's discharge. However, as we have recently explained, this causation must be truly direct. When the biased recommender and the actual decision-maker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity. Instead, the plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee.

<u>Id.</u> at 1331 (internal citations omitted).

Bauer testified that he received "input" from LaCour prior to terminating Arean, but stated that such input did not amount to a recommendation by LaCour to discharge Arean. (Bauer Dep. Doc. # 110-1 at 18). LaCour also testified that she did not recommend terminating Arean, and that her job was limited to writing disciplinary orders that she then sent up the chain of command for further action. (LaCour Dep. Doc. # 107-9 at 49). Arean has not presented evidence to refute this testimony. Likewise, he has not introduced any other evidence

that could reasonably indicate that LaCour's alleged discriminatory animus influenced Bauer's decision either directly or under the "cat's paw" theory.[4]  To the contrary, the evidence shows that Bauer had the sole power to terminate employees and that he did so after consulting with numerous sources.  Consequently, the Court holds that Arean has failed to produce sufficient evidence to allow a reasonable jury to find Defendants' legitimate, non-discriminatory reason for terminating Arean was merely pretext for unlawful discrimination.  Accordingly, Defendants are entitled to summary judgment on Arean's sexual harassment claim.

## 2. **Retaliation**

Arean alleges a claim for unlawful retaliation under

---

[4]    "One way of proving that the discriminatory animus behind the recommendation caused the discharge is under the 'cat's paw' theory. This theory provides that causation may be established if the plaintiff shows that the decision-maker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decision-maker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." Stimpson, 186 F.3d at 1332.  Given the unrefuted evidence that LaCour did not make a recommendation to terminate Arean, Arean cannot establish discriminatory animus under this theory because there was no biased recommendation for Bauer to blindly follow.  Moreover, the evidence shows that a corroborating eyewitness statement was provided by Lynn Cross and that Bauer also consulted with Virginia Chadwick prior to terminating Arean, thus satisfying the independent investigation requirement.

Title VII in Count III and under the FCRA in Count V.[5]  As

with discrimination, a plaintiff claiming retaliation can

prove his case through direct or circumstantial evidence, and

if the plaintiff relies on circumstantial evidence, the Court

applies the McDonnell Douglas burden-shifting analysis.  See

Strickland, 239 F.3d at 1207.  Here, Arean has not come

forward with direct evidence of retaliatory intent, and

therefore must prove retaliatory intent with circumstantial

evidence.

To establish a prima facie case of retaliation in the

absence of direct evidence of retaliatory intent, Arean must

show: (1) that there was a statutorily protected activity, (2)

that an adverse employment action occurred, and (3) that there

was a causal link between the protected activity and the

adverse employment action. Dixon v. Hallmark Cos., 627 F.3d

849, 856 (11th Cir. 2010).

A plaintiff engages in statutorily protected activity

when he opposes an employment practice that he has a good

faith, reasonable basis to believe is unlawful. Diamond v.

---

[5]     As previously stated, claims under Title VII and the
FCRA are analyzed under the same framework. See Gamboa, 170 F.
App'x at 612.  Accordingly, the Court's Title VII analysis of
Arean's retaliation claim also disposes of Arean's FCRA
retaliation claim.

Morris, Manning & Martin, LLP, No. 11-11918, 2012 WL 386292, *1 (11th Cir. Feb. 8, 2012)(citation omitted). "A plaintiff must not only show that [he] subjectively (that is, in good faith) believed that [his] employer was engaged in unlawful practices, but also that [his] belief was objectively reasonable in light of the facts and record presented." Id.

The Court finds that Arean engaged in statutorily protected activity on September 25, 2009, when he told LaCour that he was going to file charges against her for sexual harassment, and on November 6, 2009, when he reported the alleged sexual harassment to CFI's human resources department.

Arean alleges three retaliatory acts followed his statutorily protected activity: (1) that LaCour began checking up on him while he was working by calling on his radio, asking his location, and questioning what he had spoken to others about; (2) he received a written disciplinary order; and (3) he was terminated.

Title VII does not protect an individual from all retaliation, but only from retaliation that produces an injury or harm. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). Thus, an action must be materially adverse to be actionable. Id. A materially adverse action is  any action that "might have dissuaded a reasonable worker from

making or supporting a charge of discrimination" and does not include "petty slights, minor annoyances, and simple lack of good manners." Id. at 68.

Based on the White standard, the Court finds that the first retaliatory action complained of – LaCour's checking up on him during work - does not constitute a materially adverse action as a matter of law, because, as Arean's supervisor, she was allowed to do so.  However, written disciplinary warnings and termination would likely dissuade a reasonable worker from making a charge of discrimination, and accordingly, the Court finds them to be  materially adverse employment actions. Thus, Arean's claim depends on whether he can establish the third prong of the prima facie case – causation - as to these actions.

### a.  Written Disciplinary Order

LaCour issued a written disciplinary order to Arean on September 25, 2009, regarding an incident with a vendor. During the process of LaCour issuing the order, Arean engaged in his first instance of statutorily protected activity by informing her that he was going to file sexual harassment charges against her. (LaCour Dep. Doc. # 107-9 at 21-23). To establish a causal link between the protected activity and the adverse employment action, "a plaintiff need only show that

the protected activity and the adverse action were not wholly unrelated." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision-maker was aware of the protected conduct at the time of the adverse employment action." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000).

Here, the evidence shows that LaCour had already issued the written disciplinary order on September 25, 2009, or at a minimum had begun the process of doing so, when Arean complained to her that same day about her allegedly harassing conduct. (LaCour Dep. Doc. # 107-9 at 21-23). Because the alleged retaliatory conduct -- the disciplinary order -- occurred before Arean engaged in a statutorily protected activity -- complaining to LaCour about her conduct -- Arean cannot demonstrate that his statement to LaCour caused her to issue the disciplinary order in retaliation. See Weaver v. Fla. Power & Light, No. 95-cv-8519, 1996 WL 479117, *15 (S.D. Fla. July 16, 1996) ("As a matter of law, there can be no causal connection when the alleged retaliatory conduct occurs prior to the protected activity."). Accordingly, the Court finds that Arean cannot establish a prima facie case of retaliation regarding the written disciplinary order he

received.

                    b.    <u>Termination</u>

        The only evidence Arean has cited to support the
causation element of his retaliation claim is that he was
terminated after complaining to CFI's human resources
department about the alleged sexual harassment.  However,
Defendants contend that Arean cannot establish the necessary
causal connection between his protected activity and his
termination because his February 10, 2010, termination
occurred more than three months after he contacted CFI's human
resources department on November 9, 2009.  The Court agrees
with Defendants' argument.

        "The cases that accept mere temporal proximity between an
employer's knowledge of protected activity and an adverse
employment action as sufficient evidence of causality to
establish a prima facie case uniformly hold that the temporal
proximity must be very close."  <u>Clark County Sch. Dist. v.</u>
<u>Breeden</u>, 532 U.S. 268, 273 (2001).  Additionally, the Eleventh
Circuit has held that in the absence of any other evidence of
causation, a three-month proximity between a protected
activity and an adverse employment action is insufficient to
create a jury issue on causation.  <u>Drago v. Jenne</u>, 453 F.3d
1301, 1308 (11th Cir. 2006); <u>see</u> <u>also</u> <u>Higdon v. Jackson</u>, 393

F.3d 1211, 1220-21 (11th Cir. 2004) (noting that a one-month gap between protected activity and adverse action would suggest a causal relationship, but refusing to recognize a three-month proximity between the protected activity and the adverse employment action as sufficient proof of causation).

Accordingly, the Court finds that in the absence of any evidence that Bauer had a retaliatory motive when terminating Arean, the three-month time span between the protected activity and Arean's termination is insufficient to create a jury issue on causation.[6]  Therefore, Arean has failed to establish a prima facie case for retaliation, and summary judgment in Defendants' favor is appropriate.

**B.    Jackson's Claims**

**1.    Title VII Retaliation**

Defendants argue that they are entitled to summary

---

[6]    Plaintiff argues that the time span between the protected activity and termination was actually less than three months because Arean was on FMLA leave until November 23, 2009, and is therefore sufficient to establish causation. The Court finds this argument unavailing.  Perhaps if Arean had been on leave for a substantial portion of the three-month period and was fired immediately upon his return, a sufficient temporal proximity could be found to exist. However, given the facts here, the Court fails to see how Arean's two-week absence immediately following his protected activity would have delayed a termination for the following two and one-half months, if indeed Bauer intended to terminate him in retaliation for his protected activity.

judgment on Jackson's Title VII retaliation claim because it is time-barred. Plaintiff does not appear to dispute this argument.

Section 706 of Title VII requires a plaintiff to exhaust certain administrative remedies before filing a suit for employment discrimination. See generally 42 U.S.C. § 2000e-5; E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002). "The administrative process is initiated by timely filing a charge of discrimination. For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." Joe's Stone Crabs, Inc., 296 F.3d at 1271. Accordingly, only those claims arising within 300 days prior to the filing of Jackson's charge of discrimination are actionable. Because Jackson filed her charge of discrimination at the earliest on October 26, 2010, discriminatory or retaliatory acts occurring prior to December 30, 2009, are outside the scope of this action.

The only retaliatory act alleged by Jackson in the operative complaint is her termination, which occurred on December 1, 2009. Jackson's charge of discrimination was not timely filed within 300 days of the alleged retaliatory action and, therefore, is outside the scope of this action. "Where the claims challenge discrete discriminatory or retaliatory

acts, the timely-filing requirement erects an absolute bar on recovery for acts occurring outside the limitations period." Pino v. School Bd. of Collier County, No. 2:06-cv-613-FTM-29SPC, 2008 WL 169718, at *3 (M.D. Fla. Jan. 17, 2008). Accordingly, the claim is time-barred under Title VII and Defendants are entitled to summary judgment on this count.

## 2. <u>FCRA Retaliation</u>

Jackson alleges that she was terminated in retaliation for reporting LaCour's alleged sexual harassment of Arean, in violation of the FCRA.[7]   Section 760.10, Florida Statutes, provides that it is an unlawful employment practice for an employer to discriminate against a person "because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."   Again, because the FCRA was modeled after Title VII, the Court will analyze Jackson's retaliation claim in the same manner as it does Title VII claims. See <u>Gamboa</u>, 170 F. App'x at 612.

---

[7]     Defendants do not dispute that Jackson's retaliation claim under the FCRA was timely filed within the longer 365-day period provided by the FCRA.

As previously discussed, a plaintiff claiming retaliation can prove his case through direct or circumstantial evidence. See McDonnell Douglas Corp., 411 U.S. at 800; Strickland, 239 F.3d at 1207.  If the plaintiff relies on circumstantial evidence, the Court applies the McDonnell Douglas burden-shifting analysis. Here, Jackson has not come forward with direct evidence of retaliation.  Therefore, Jackson must prove retaliation with circumstantial evidence.

Once again, the prima facie elements of retaliation that Jackson must establish are: (1) that there was a statutorily protected activity, (2) that an adverse employment action occurred, and (3) that there was a causal link between the protected activity and the adverse employment action. Dixon, 627 F.3d at 856.

Jackson engaged in protected activity on or about November 20, 2009, when she reported her conversation with LaCour about Arean's sexual harassment claims to Rivera in CFI's human resources department.  Jackson faced an adverse employment action when she was terminated on December 1, 2009. Thus, Jackson's claim satisfies the first two elements of the prima facie case, and the question now turns on whether Jackson has satisfied the third element – causation.

To establish a causal link between the protected activity

and the adverse employment action, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." <u>Clover</u>, 176 F. 3d at 1354. "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision-maker was aware of the protected conduct at the time of the adverse employment action." <u>Brungart</u>, 231 F. 3d at 799.

Defendants contend that Jackson cannot establish the requisite causal connection between her protected conduct and her termination. Specifically, Defendants argue that Bauer was the only decision-maker responsible for Jackson's termination and Bauer was unaware of Jackson's protected conduct at the time he terminated her. In response, Plaintiffs assert that the close temporal proximity between the protected activity and Jackson's termination -- approximately ten days -- is sufficient to establish the necessary causal connection.

Plaintiffs correctly note that "the general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." <u>Brungart</u>, 231 F. 3d at 799. However, there is a notable exception to the general rule:

"temporal proximity alone is insufficient to create a genuine issue of fact as to the causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct." Id. "Neither a court nor a jury may impute knowledge to a decision-maker who has sworn he had no actual knowledge." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1156 (11th Cir. 2002).

Bauer testified that he did not know about Jackson's call to CFI's human resources department, that he decided to eliminate Jackson's position several weeks before Jackson engaged in the protected activity, and that his motive for terminating Jackson was that her position was no longer needed. (Bauer Dep. Doc. # 110-1 at 3, 19). Plaintiffs attempt to rebut Bauer's testimony by arguing that the mere fact that the call was received by the human resources department and that Rivera and Chadwick were both aware of the call suggests that Bauer must have known about the call as well. However, Bauer testified that he did not oversee the human resources department and that, consequently, Rivera was not required to tell him of the call, only her superiors. (Bauer Dep. Doc. # 110-1 at 3).

"Discrimination is about actual knowledge and real

intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker." Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1274 (11th Cir. 2002). Given this, the Court finds that Arean's proffered evidence attempting to establish Bauer's constructive knowledge or assumed intent is insufficient to raise a genuine issue of material fact for trial or to rebut Bauer's sworn testimony that he had no knowledge of Jackson's call to human resources prior to her termination.

Based on the unrebutted evidence that the decision-maker, Bauer, had no knowledge of Jackson's protected activity prior to terminating her, the Court finds that Jackson failed to establish a prima facie case of retaliation. See Hudson v. S. Ductile Casting Corp., 849 F.2d 1372 (11th Cir. 1988) (affirming summary judgment in defendant's favor where there was uncontradicted evidence that the decision-makers were unaware of the plaintiff's threat to file an EEOC charge); McCollum v. Bolger, 794 F.2d 602 (11th Cir. 1986)(affirming holding that the plaintiff failed to prove a prima facie case of retaliation where evidence showed the decision-maker did not know that the plaintiff was engaging in protected

conduct). Accordingly, the Court grants summary judgment in Defendants' favor as to Jackson's retaliation claim under the FCRA.

### C.  <u>FLSA Claims Against LaCour</u>

In an FLSA case, a plaintiff may seek to sue an individual employer or multiple employers. <u>Kendrick v. Eagle Int'l Group, LLC</u>, No. 8-80909-CIV, 2010 WL 1257674, at *3 (S.D. Fla. May 26, 2010). "The FLSA contemplates that there may be several simultaneous employers who are responsible for compliance with the FLSA." <u>Id.</u> (citing <u>Falk v. Brennan</u>, 414 U.S. 190, 195 (1973)). However, an individual cannot be held personally liable for violating the overtime provision of the FLSA unless he is an "employer" as that term is defined by the Act. <u>Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.</u>, 515 F.3d 1150, 1160 (11th Cir. 2008). The Act broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

Defendants argue that LaCour cannot be considered an "employer" under the FLSA because she was "nothing more than a run of the mill supervisor who lacked the stature and authority required to be an employer." (Doc. # 91 at 27). Defendants assert that because LaCour lacked the authority to

set or change Cinnamon Cove's compensation policy and because she was not responsible for compensation payments to the Plaintiffs, her responsibilities were insufficient to classify her as an employer under the FLSA as a matter of law. (Id. at 27-28). The Court finds Defendants' argument unpersuasive.

"Controlling Eleventh Circuit precedent mandates that the issue of whether the defendant is an employer is a question of law, 'with the subsidiary findings being issues of fact.'" Vondriska v. Cugno, No. 8:07-cv-1322-T-24-TGW, 2010 WL 3245426, at *2 (M.D. Fla. Aug. 17, 2010)(quoting Patel, 803 F.2d 632, 634 n.1 (11th Cir. 1986)). "The subsidiary findings of fact are made by 'entertaining and assessing the evidence relevant to the inquiry called for by a given factor . . .' and in doing so, 'the court is, in effect, conducting a miniature bench trial.'" Id. (quoting Martinez-Mendoza v. Champion Int'l Corp., 340 F.3d 1200, 1209 & 1209 n.27 (11th Cir. 2009)). "Ultimately, the answers to the individual inquiries are viewed together and the Court must determine, from those answers, whether the [employees] established [the putative employer's employer] status by a preponderance of the evidence – a question of law." Id. (internal quotations omitted).

The Supreme Court has emphasized the "expansiveness" of

the FLSA's definition of employer. <u>Falk</u>, 414 U.S. at 195 (1973). "Courts consistently have held that the term 'employer' is not limited to the narrow or technical concepts of employment but rather is given a broad meaning to carry out the purpose of the Act." <u>Brock v. VAFLA Corp.</u>, 668 F. Supp. 1516, 1520 (M.D. Fla. 1987)(citations omitted); <u>see also</u> <u>Alvarez Perez</u>, 515 F.3d at 1160 ("[W]hether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity.")(citations omitted). Further, "the parameters of §203(d) are sufficiently broad to encompass an individual who . . . acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." <u>Brock</u>, 668 F. Supp. at 1520 (citations omitted).

In deciding whether a party is an employer, courts have often applied the "economic reality" test instead of common law concepts of agency. <u>See</u> <u>Goldberg v. Whitaker House Coop.</u>, 366 U.S. 28, 33 (1961). "The economic reality test includes inquiries into whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Villarreal v. Woodham</u>, 113 F.3d 202, 205

(11th Cir. 1997).

Plaintiffs have introduced uncontroverted evidence – specifically, LaCour's own deposition testimony – indicating that LaCour supervised the day-to-day operations of Cinnamon Cove, prepared the weekly time sheets upon which payroll was based, issued disciplinary warnings to employees including Plaintiffs, exercised control over Plaintiffs' work hours, and directly supervised Plaintiffs. (LaCour Dep. Doc. # 107-9 at 11, 28, 61-62). Considering the factors outlined above, the Court determines that Plaintiffs' proffered evidence brings LaCour within the definition of an employer under the "economic reality" test.

The Court finds support for this determination in numerous other cases. In <u>Brock</u>, for example, the court imposed personal liability for FLSA violations on an amusement park general manager who oversaw the operation of the park on a day-to-day basis, determined the duties of employees, occupied an office in which payroll records and records of hours were maintained, and discussed personnel matters with the corporation's directors. <u>Brock</u>, 668 F. Supp. at 1517. The court concluded that it was clear the individual defendant "acted directly and indirectly in the interest of defendant [] Corporation in relation to its employees." <u>Id.</u>

Similarly, in <u>Kendrick</u>, the court refused to dismiss an FLSA claim against a company's sales manager where the manager oversaw the day-to-day operations of the office, required all employees to report to him as manager, approved leave requests, supervised and evaluated the plaintiff, and directed the plaintiff in her hours, work, and job duties. Kendrick, 2010 WL 1257674, at *3.

Based on the undisputed evidence and the analogous cases discussed herein, this Court finds that LaCour's responsibilities as property manager of Cinnamon Cove are sufficient to hold her individually liable under the FLSA's expansive definition of an "employer." Therefore, the Court determines that Defendants are not entitled to summary judgment as a matter of law, and, accordingly, denies summary judgment on this issue.[8]

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

Defendants' Motion for Summary Judgment (Doc. # 91) is **GRANTED in part** and **DENIED in part**. Defendants are entitled

---

[8]    Notwithstanding the Court's finding that LaCour constitutes an employer as that term is broadly defined by the FLSA, the Court agrees with Defendants, and Plaintiffs do not dispute, that LaCour cannot be held individually liable for any FLSA violations that may have occurred prior to the date she became property manager at Cinnamon Cove, January 2, 2009.

to summary judgment as to Arean's sexual harassment and retaliation claims and as to Jackson's retaliation claims. Defendants' motion for summary judgment is denied as to Plaintiffs' FLSA claims against Defendant Jennifer LaCour.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of April, 2012.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies:  All Counsel of Record